JUDGE FORREST

Edward W. Floyd
Luke F. Zadkovich
FLOYD ZADKOVICH (US) LLP
215 Park Avenue South, 11th Floor
New York, NY 10003
(917) 999-6914

**18 CV 7565**

ed.floyd@floydzad.com
luke.zadkovich@floydzad.com

*Attorneys for Petitioner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CZECH REPUBLIC,

                        Petitioner,

      -against-

A11Y LTD.

                        Respondent.
-------------------------------------------------------------------x

Case No.:

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTACHMENT AND TRO**

Petitioner, the Czech Republic ("Petitioner" or "Czech Republic"), by its attorneys Floyd Zadkovich (US) LLP, submits this Memorandum of Law in Support of its motion for a temporary restraining order and an attachment of property belonging to Respondent, A11Y Ltd. ("Respondent" or "A11Y").

## FACTS

The facts set forth in the Petition, as well as in the accompanying Declaration of Dr. Alfred Siwy (executed on August 17, 2018) (the "Siwy Declaration") and in the accompanying Declaration of Edward W. Floyd (executed August 20, 2018), are fully incorporated herein.

In broad summary, A11Y commenced arbitration proceedings against the Czech Republic based on allegations including indirect expropriation. (Petition ¶ 7) Those arbitration proceedings

1

were conducted pursuant to the UNCITRAL Arbitration Rules (1976), were administered by the International Centre for Settlement of Investment Disputes ("ICSID"), and had their seat in Paris, France. (Petition ¶ 1, 4 and 5) The basis for the arbitration was Article 8(2)(A) of the *Agreement of the United Kingdom of Great Britain and Northern Ireland and the Government of the Czech and Slovak Federal Republic for the Promotion and Protection of Investments* (the "Agreement"). A copy of the Agreement is annexed as Exhibit A to the Siwy Declaration. The proceedings, commenced in October 2014, ran until June 29, 2018 when the Tribunal issued a final award of the same date (the "Award") which, amongst other things, awarded costs of $373,932.02 to Petitioner. (Siwy Decl. ¶¶ 6-8). A copy of a certified copy of the Award is annexed as Exhibit B to the Siwy Declaration. Moreover, in written communications sent by A11Y's director to Dr. Siwy (who was counsel for the Czech Republic throughout the arbitration), A11Y has effectively conceded that there are not any grounds to challenge the Award. (Siwy Decl. ¶¶ 9-10)

Separately, during the course of the arbitration proceedings, ICSID issued multiple requests for the parties to deposit funds (i.e., for arbitration-related fees). (Siwy Decl. ¶ 14) Those deposit requests uniformly reflected that the funds were being "credited to the trust fund account established for this case." (Siwy Decl. ¶¶ 16-19) While that account was apparently held in the name of the International Bank for Reconstruction and Development at Wells Fargo in New York (Siwy Decl. ¶ 17), all pertinent communications from ICSID confirm that the deposited funds were held in trust for, and as the property of, the depositors (including A11Y). Indeed, the communications readily identified the concerned "trust fund account" as having been specifically "established for this case." The account thus appears to be a distinct account, set up only to hold funds belonging to A11Y and Petitioner. That conclusion is underscored by the fact that ICSID

advised the parties to specifically designate, in their SWIFT messages, whether the funds were coming from A11Y or the Czech Republic. (Siwy Decl. ¶ 17)

Additionally, on August 15, 2018, ICSID advised the parties as to their respective, post-arbitration balances in the trust account. In that regard, A11Y's refundable amount is $104,656.52. (Siwy Decl. ¶ 6) Petitioner is also informed that ICSID will *imminently* – as early as this week - provide the parties with the necessary forms for arranging return of their balances. (Siwy Decl. ¶ 6) That could be today or tomorrow. However, A11Y's director has also now represented that A11Y is insolvent – and only has approximately GBP 3,000 in assets. (Siwy Decl. ¶ 23) It has also become known that A11Y had entered into a funding agreement with a litigation funder.

In light of the foregoing, Petitioner has a very real, and imminent concern, that A11Y's property in New York (i.e., the funds at Wells Fargo) will shortly be transferred out of the jurisdiction and that, thereafter, the same funds could quite likely end up being turned over to the litigation funder. Given that the Czech Republic prevailed in the arbitration and was awarded nearly $400,000 in costs, that would be an outrageous and utterly inequitable outcome, rendering the Award ineffectual and causing irreparable loss due to A11Y's purported insolvency.

Petitioner has accordingly made its instant motion for a TRO and attachment order to, hopefully, prevent such circumstances.

## ARGUMENT

1. **Petitioner is entitled to an attachment order under NY CPLR § 7502(c).**

Pursuant to Rule 64 of the Federal Rules, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P.

3

64(a) (including, as is specifically set forth in Rule 64(b), state law attachment procedures). Here, Petitioner seeks an attachment pursuant to NY CPLR § 7502(c).

The express standard for obtaining provisional relief pursuant to Section 7502(c) is that the applicant shows that "'the award to which [it] may be entitled may be rendered ineffectual without such provisional relief.'" *Discovery Growth Fund v. 6D Global Tech. Inc.*, 15 cv 7618, 2015 WL 6619971, *3 (S.D.N.Y. Oct. 30, 205) (quoting Section 7502[c]). As observed by the *Discovery Growth Fund* Court, a party seeking provisional relief pursuant to Section 7502(c) might also need to satisfy *three* of the requirements set forth CPLR § 6212(a), but not all four. *Id.* (holding that the portion of Section 6212(a) which calls for a showing that one or more of the Section 6201 'grounds for attachment' exists, does not extend to attachment applications where the underlying basis is risk that an arbitral award may be rendered ineffectual) (citing *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, 11 cv 04971, 2011 WL 6957595, at *8 [S.D.N.Y. Dec. 28, 2011]; and *Sivault Sys., Inc. v. Wondernet, Ltd.*, 05 cv 0890, 2005 WL 681457, at *3 n. 1 [S.D.N.Y. Mar. 25, 2005] ["The grounds for attachment set forth in Section 6201 are, by the express terms of Section 7205(c), inapplicable to petitions for orders of attachment brought pursuant to that latter section."])

With respect to the Section 6212(a) factors which may be applicable to a Section 7502(c) attachment application, that section looks to whether "there is a cause of action . . . it is probable that the plaintiff will succeed on the merits . . . and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR 6212(a).

It should be noted as a preliminary matter that Petitioner readily satisfies the fundamental basis for the attachment which it seeks. The Award debtor has written that it is in dire financial straights and cannot pay the Award even though it would "gladly like to pay." (Siwy Decl. ¶ 9)

4

That is the epitome of circumstances rendering an award, or any collection right, ineffectual. Moreover, if Petitioner cannot attach A11Y's property at Wells Fargo, then that property will most certainly leave the jurisdiction and will also quite likely not remain in the hands of A11Y for any reasonable period of time. Attachment is thus warranted to give the Award meaningful effect.

Petitioner's application also easily satisfies all pertinent factors under Section 6212(a).

First, Petitioner clearly has a cause of action for confirmation of a foreign arbitral award under the relevant section of Chapter 2 of the Federal Arbitration Act. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.")

Second, it is well beyond probable that Petitioner will succeed on the merits of that cause of action. A11Y's own director has acknowledged the Award's validity.

Lastly, Petitioner is unaware of any counterclaims which A11Y has or could possibly have.

Given the heightened extent to which the Petitioner satisfies the statutory requirements for the requested attachment, an order granting the attachment should undoubtedly be issued. *See Capital Ventures Intern. v. Republic of Argentina,* 443 F3d 214, 222 (2d Cir. 2006) ("Where . . . a statutory ground for attachment exists and both need and likelihood of success are established, its discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then.").

**2. Issuance of a temporary restraining order is equally warranted here.**

5

The Petitioner also seeks a temporary restraining order, pursuant Fed. R. Civ. P. Rule 65 so as to prevent A11Y's funds at Wells Fargo from being transferred out of the jurisdiction, or otherwise disbursed, during the pendency of this motion practice.

Courts in this District have held that "[t]he standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 . . . are identical" and that obtaining such relief calls for: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *AIM Intern. Trading LLC v. Valcucine SpA.*, 188 F.Supp.2d 384, 386–87 [S.D.N.Y. 2002] [citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 [2d Cir. 1979]]). The purpose of a TRO is "to preserve the status quo." *Id.*

Here, for all the reasons already set forth above, the irreparable harm factor is fully satisfied. Absent temporary provisional relief, the overwhelmingly likely outcome is that the funds will not remain in the jurisdiction during the pendency of motion practice. Issuance of an attachment order (absent a preceding TRO) would not catch the concerned funds in time to prevent their transfer out of the jurisdiction and onwards from there. It is equally clear that Petitioner has far more than a likelihood of success on the merits and, to the extent that a balancing of hardship even needs to be considered, that lever would tip entirely towards Petitioner which has spent many years arbitrating the underlying proceedings and should be able to recover the Award which has been rendered in its favor (particularly when one considers that the outside financiers apparently funded A11Y's arbitration).

**3. Security should not be directed or should be set at the barest minimum.**

The circumstances presented reflect that there should be no need for security in this matter. There is no conceivable doubt that the Award obtained by the Czech Republic will be confirmed. Likewise, there is no question that all requirements for an attachment order (and TRO) are satisfied here. As such, it is respectfully submitted that a security requirement would be unnecessary. To the extent the Court determines that security must be posted, it is respectfully submitted that the amount should be minimal. That is particularly so with regard to any security requirement for the requested TRO. *See Veeco Instruments, Inc. v. SGL Carbon, LLC*, 17 cv 2217, 2017 WL 8676438 (S.D.N.Y. Dec. 26, 2017) (holding that controlling law authorizes a court considering an application under Rule 65 to dispense, in its discretion, with any security requirement).

## CONCLUSION

For all the foregoing reasons, the Court should grant Petitioner's motion for an attachment and enter a temporary restraining order until the attachment application is decided.

Dated: New York, New York
August 20, 2018

FLOYD ZADKOVICH (US) LLP

By: /s/ Edward W. Floyd
Edward W. Floyd
Luke F. Zadkovich

215 Park Avenue South, 11th Floor
New York, New York 10003

(917) 999-6914

ed.floyd@floydzad.com
luke.zadkovich@floydzad.com